BERENICE BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24667, 36637. Promulgated March 8, 1932.

*Lawrence A. Baker, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

818

GOODRICH: Petitioner claims a value of her patent rights as of the date of acquisition by her of $700,000, and contends that she is entitled to recover that value by means of deductions on account of depreciation thereof over the lives of the patents. Respondent advances several contentions in opposition. He urges, first, that petitioner acquired these patent applications not by gift, but for a consideration, in which case the basis for depreciation is the original

cost thereof, which is not disclosed by this record. Next, he contends that, regardless of the basis, petitioner is not entitled to depreciation, because during the years here involved she was not the owner of the patents, since they had been transferred to trustees and no allowance on account of the exhaustion of trust property may be made to a beneficiary of a trust. Finally, he disputes the value of the patent applications as claimed by petitioner, contending that it was not in excess of about $25,000.

Respondent's contention, that petitioner's acquisition of these patent applications was not by gift, is bottomed solely upon the following testimony by Brown:.

At the time I was working out the development of this shoe proposition I had given up a very lucrative engagement in the line which I had been working, and there came a time when it was necessary for me to have more funds to operate with or give up the idea, and go back into my old business. Mrs. Brown and her mother had resources, and they agreed to contribute the funds necessary to carry on everything to have me proceed with the shoe proposition rather than go back into the old business. Their belief and enthusiasm was such that they were willing to take the chance, and on the strength of that I agreed to assign the patents when issued to Mrs. Brown.

As we consider this case we become convinced that in agreeing to transfer to petitioner his patent applications, Brown was motivated not by the money advanced by Mrs. Brown and her mother, but by the fact that they had given their support to an endeavor which had, for him, become of great interest and were willing to assist him in every possible way, even to drawing upon their own financial resources, to bring his labors to a successful culmination. Brown had abandoned a lucrative connection in the advertising business to enter a field to which his interest led him. Through his observations, his studies and experiments he had become convinced that ordinary footwear was largely responsible for most of the foot trouble from which so many people suffer and that, in turn, such trouble was responsible for much ill health and misery. He had experimented considerably with devices designed to cure individual cases of foot malformation and defects and came to believe that the majority of such cases could have been avoided had the sufferers worn shoes so scientifically modeled as to permit the foot to perform its natural functions, free from the restrictions and damages caused by ordinary footwear. The development of his ideas, therefore, became for him more than a commercial proposition. He made it his life's work and he believed that to accomplish it would be to confer a benefit upon mankind. There is no doubt but that to have the members of his family believe in his ideas and their ultimate development, and to wish him to continue in his endeavors, meant much to him. Judging him as he appeared before us, we are convinced that he is a person who would respond generously to the

loyalty offered him by these members of his family and that reaction, we believe, motivated him in making the assignments. The amounts advanced by petitioner and her mother are not disclosed. We infer from the record that they were small; that they met only the living expenses of the family and some traveling expenses for Brown while engaged in his demonstrations and in making his contacts with the manufacturers who later entered into contracts with him and petitioner. Brown testified that the advances in nowise represented a selling price of the patents; that he would not have assigned to any outsider upon these terms; and that "love and affection" as recited in the assignment, was an important item in connection therewith. We conclude that the assignments made by Brown to petitioner were gifts.

In support of his contention that, regardless of the manner in which acquired, petitioner may not have a deduction on account of depreciation because she was not the owner of the patents during the years here involved, but was only the beneficiary of a trust, respondent cites the cases of *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Detroit Trust Co. et al.*, 16 B. T. A. 207; and *Richard Sharpe et al.*, 17 B. T. A. 135. The *Baltzell* case arose under the Revenue Act of 1918 and deals with income of a trust described by section 219 (a) (4) as follows in part:

"(4) Income which is to be distributed to the beneficiaries periodically whether or not at regular intervals * * *." The *Detroit Trust Company* case arose under a similar provision of the 1921 Act and was controlled by the *Baltzell* decision, as was the *Sharpe* case, arising under a similar provision of the 1924 Act. These decisions, and the many other decided cases bearing on the same issue, manifest the rule that a beneficiary of a trust is not entitled to deduct from his distributable share of the trust income an allowance for the exhaustion of the trust property. But this issue does not arise in the case at bar. Here, there are no distributions from the trust, periodic or otherwise, for the trust has no income. It was created by petitioner for purposes of management and protection of her patents. Under it, the trustees may grant licenses of the patents, or sell or dispose of them only upon petitioner's assent and direction. She retained the power to terminate the trust; she remained the veritable owner of the patents. True, the agreement provided that upon termination of the trust petitioner should convey to the Selby Shoe Company a one-half interest in the patents so far as they relate to the women's and misses' shoe business and, in case of sale of the patents, should make a settlement with the licensees, but the rights of these parties are vague, indefinite and dependent upon future agreements. There is nothing to indicate that the trust will be terminated within the lives

of the patents and we regard these possible interests as too contingent to effect such a substantial derogation of petitioner's ownership as to bar her from a deduction representing the exhaustion of the patents and allowed her under section 214 (a) (8) of the Revenue Acts of 1921 and 1924. Again, we point out that all royalties arising under the licenses granted under these patents are paid directly to petitioner, not to the trust. It is manifest that this fact makes here inapplicable the statutory provisions treated in the cases cited. Cf. *Julia N. DeForest*, 4 B. T. A. 1059.

We have held that the patent applications were acquired by petitioner by gift, prior to December 31, 1920. Therefore, under section 204 (a) (4) of the Revenue Act of 1924, the basis for depreciation thereof is their fair market value as of date of acquisition. *Harry W. Bockhoff*, 3 B. T. A. 560. Applications for letters patent are property subject to valuation which may be recovered by depreciation allowances over the life of the patents. *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158; *Hershey Manufacturing Co.*, 14 B. T. A. 867; *Stephens-Adamson Manufacturing Co.*, 16 B. T. A. 41; *Empire Machine Co.*, 16 B. T. A. 1099; *John Douglas Co.*, 23 B. T. A. 1307.

Our determination of the total value of these patent applications when acquired by petitioner we have set out in our findings of fact. In determining this value we have relied largely upon the testimony of two witnesses of outstanding qualifications. Both had long been connected and were in positions of responsibility with long established and leading shoe manufacturers, one a maker of women's and misses' shoes; the other a maker of men's and boys' shoes. That these witnesses were familiar with the shoe business in all its phases and were competent to judge of the importance in the trade of Brown's developments and the future commercial possibilities of those ideas can not be questioned. At the time Brown presented his proposition to their concerns and both decided to take it up, each of these witnesses made estimates as to what future business his concern could develop with the Arch Preserver shoe. Upon these estimates we rely, for they were made by persons who were in a position to gauge the future as well as that could be done with respect to this proposition and their accuracy has been borne out well by subsequent production, except during a war period which they could not have foreseen. Since the estimates of future production had been made, and the royalty fixed prior to the assignment of the applications to petitioner, we base our determination of value upon those factors. Based upon that valuation, an annual deduction should be allowed petitioner during the lives of these patents.

*Judgment will be entered under Rule 50.*